UNITED STATES of America,
Plaintiff–Appellant,

v.

David S. TAYLOR, Defendant–Appellee.

No. 91–5280.

United States Court of Appeals,
Eleventh Circuit.

Sept. 18, 1992.

Richard P. Murad, Asst. U.S. Atty., Fort Lauderdale, Fla., Linda Collins Hertz, Dawn Bowen, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Victor D. Martinez, Bruce Kessler, Martinez & Kessler, Miami, Fla., for defendant-appellee.

Before KRAVITCH, Circuit Judge, HILL, and SMITH *, Senior Circuit Judges.

EDWARD S. SMITH, Senior Circuit Judge:

The United States (Government) appeals the 7 March 1991 order of the United States District Court for the Southern District of Florida granting David S. Taylor's motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.[1] The trial court granted Taylor's motion after a jury had found him guilty of two counts of sending threatening communications through the mail in violation of 18 U.S.C. § 876. We reverse and remand.

### Issues

The issue presented is whether the district court committed reversible error by granting Taylor's Motion for Judgment of Acquittal in light of the evidence presented to the jury that convicted him. In the event that this court reinstates the jury verdict of guilty, we must also decide whether the case should be reassigned to another judge for sentencing.

### Background

On 30 October 1990, a federal grand jury charged Taylor with two counts of sending threatening communications through the mail in violation of 18 U.S.C. § 876. Taylor was tried in district court before a jury in a two day trial. At the close of the Government's case, Taylor moved for a Rule 29 judgment of acquittal on the ground that the communications were ambiguous and thus did not constitute threats. The trial judge denied the motion. The defense rested without presenting any evidence, and renewed the motion for judgment of acquittal on the same basis. The trial judge reserved ruling on the motion pursuant to Rule 29(b) and submitted the case to the jury.

On 1 March 1991, the jury returned a verdict of guilty respecting both counts of the indictment. On 5 March 1991, additional arguments were heard in district court on the motion for judgment of acquittal. Two days later, the trial judge granted Taylor's motion for judgment of acquittal.

### Facts

The relevant facts underlying this appeal span a period of over twenty years. David S. Taylor began dating Kathleen McHugh [2] in the late 1960's while both were high school students in Midlothian, Illinois. Taylor was a senior and Kathleen a junior at that time. Their relationship continued throughout that year and into the following year when Taylor was away at college. He returned during Kathleen's senior year at which time Kathleen voiced her dissatisfaction with the relationship, and in the spring of 1969 she attempted to end the relationship with Taylor. Taylor was unable to

---

\* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

1. *United States v. Taylor*, 759 F.Supp. 804 (S.D.Fla.1991).

2. Kathleen McHugh was married in 1973 to David Goldstein. Hereafter, she will be referred to as "Kathleen" or "Mrs. Goldstein".

accept the break-up, and continued to contact her as well as the young men she was dating.

As a result of Taylor's behavior, Kathleen's parents sent her from Illinois to live in Florida with her grandmother and to attend college. Despite her move to Florida and her persistent pleas to stop his behavior, Taylor continued to contact Kathleen through calls and letters. Taylor's conduct continued even after he learned that Kathleen had been married in 1973 to David Goldstein. In the ensuing years the calls and letters to Kathleen Goldstein persisted. Taylor's letters numbered in the hundreds. The Goldsteins moved several times, but Taylor always managed to locate them.

During this period, Taylor continued to express his love for Kathleen and his desire that they be together. In a 1976 letter, Taylor questioned his own sanity stating in part as follows:

I am deeply troubled as you are aware of by my behavior. I can't apologize for it is predictable of someone who has lost his gourd, bananas, marbles or whatever. I hate to use the term crazy as I find it hard to believe that I have slipped that far. I am sure I have though.

In the same letter, Taylor finishes by asking for Mrs. Goldstein's forgiveness "if I ever take away anything from you that you love. I will pay the price dearly."

Some of the letters expressed his love for Kathleen, while others contained ethnic slurs directed at Mr. Goldstein's Jewish heritage. Other letters advised that Taylor had been conducting surveillance on the Goldstein family; in one particular letter Taylor described the Goldstein's son in detail. In 1982, the Goldsteins filed a civil suit against Taylor in the Circuit Court of Broward County and obtained a restraining order. Taylor ignored the order and continued to contact the Goldsteins in violation of the order.

In 1986, Taylor wrote from Arizona to a Florida newspaper making reference to Mr. Goldstein's statements in federal court that Mr. Goldstein was afraid for the safety of his family due to Taylor's behavior. In the letter Taylor stated that he had access to automatic weapons and was president of the "National Automatic Weapon Hunting Society". He went on to write that "[a]lthough it is impossible to accurately predict the future behavior of any one", he would not do anything to jeopardize the private ownership of automatic weapons.

In 1988, Taylor sent a postcard from Illinois to Mrs. Goldstein at her home in Florida. The front of the card displayed the following maxim:

"If you love a woman, let her go ... If she returns it's meant to be ... If she doesn't come back, You must for God,s [sic] Sake, hunt the bitch down and KILL her. A HEBREW PROVERB"

Mrs. Goldstein testified that she believed this communication directly threatened her life and that this message conveyed Taylor's intent to harm her as well as her husband.

Around Christmas of 1989, the Goldsteins received two "greeting cards" through the U.S. mail. Taylor wrote the two cards and caused them to be delivered by the United States Postal Service to Mrs. Kathleen Goldstein at her residence in Coral Springs, Florida. Government exhibit 4A, which forms the basis for Count II of the indictment, reads in its entirety:

Kathleen,

Your Husband, David Goldstein will have his health take a turn for the worse this Christmas Season and you will be widowed in 1990. I am truly sorry that this is the "Kay Ser Ra Ser Ra" [sic] scenario that has to take place. However you will always be the foci [sic] of my desires as I remember you to be the most exuisite [sic] creature that has ever taken me in. I'm always grateful that we have had the moments given to us and I will be there should you ever desire me again. I can say with all sincerity, I Love You.

/s/David S Taylor

Government exhibit 5A, which forms the basis for Count I of the indictment, was received in a separate envelope and reads as follows:

Kathleen

Despite the major disruptions that widowhood will bring about in your life I for whatever value I may be will be there for you. David's death from a cerebral vascular accident of an unknown idiopathy will stun all those who loved him. However despair not as I am of the belief his soul will rest comfortably at the side of the heavenly being he alleges to be of. I Love You
/s/David
For when winter cometh before the spring Sing ye the songs of astonishment and bewilder not with bereavement. For as I write the forgiver receive no punishment and David your Husband of thee we sing he was the man who dared to be King

After the jury verdict of guilty on both counts of the indictment, the district court, on 7 March 1991, granted Taylor's motion for judgment of acquittal upon which motion the judge had reserved ruling. He stated that the sole basis for this ruling was that he had erred in submitting the case to the jury; that the communications were ambiguous and thus could not constitute threats under 18 U.S.C. § 876.

### Motion for Judgment of Acquittal

 When considering a motion for judgment of acquittal, the task confronting a district court is clear. This court's predecessor[3] has stated that the "district court must determine whether the relevant evidence, viewed in a light most favorable to the Government, could be accepted by a jury as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt."[4] The district court must accept all reasonable inferences tending to support the Government's case.[5] Likewise, any conflicts in the evidence are to be resolved in the Government's favor.[6] These same factors must be considered by an appellate court when reviewing a district court's disposition of a motion for judgment of acquittal.[7]

 This court's function in determining the propriety of the trial court's granting or denying a "motion[ ] for judgment of acquittal is discharged in substantially the same manner as we use in considering whether evidence is sufficient to support a verdict of guilt ..."[8] This circuit has previously stated that sufficiency of the evidence is a question of law subject to independent review upon appeal.[9] The district court's decision on sufficiency of the evidence is entitled to no deference by this court.[10] Also, this court has specifically stated that a district court's decision "setting aside a jury verdict of guilt is entitled to no deference ..."[11]

The record reveals that the district court applied incorrect analysis to this case. The trial judge held that the cards sent by Taylor were ambiguous, and therefore could not constitute threats under 18 U.S.C. § 876. On the basis that he had improperly sent the case to the jury, the trial judge granted Taylor's motion for judgment of acquittal. As stated above, we review a grant of a motion for judgment of acquittal as a matter of law. The district court erred in its ruling in this case.

#### a. Whether a Threat Existed

We note as a threshold matter that the District Court relied upon the Eighth Cir-

3. All decisions of the Fifth Circuit handed down prior to 1 October 1981 are binding on the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

4. *United States v. Varkonyi,* 611 F.2d 84, 85 (5th Cir.1980). *See also United States v. Greer,* 850 F.2d 1447, 1450 (11th Cir.1988).

5. *United States v. Burns,* 597 F.2d 939, 941 (5th Cir.1979).

6. *Id.*

7. *Id.*

8. *United States v. Fontenot,* 483 F.2d 315, 319 (5th Cir.1973) (citation omitted).

9. *United States v. Kelly,* 888 F.2d 732, 739 (11th Cir.1989).

10. *Id.* at 739–740.

11. *United States v. Hayes Int'l Corp.,* 786 F.2d 1499, 1500 (11th Cir.1986) (citation omitted).

cuit decision in *Martin v. United States*[12] for the proposition that "[a]n ambiguous letter cannot violate 18 U.S.C. § 876."[13] In so holding, the trial court disregarded crucial parts of the Eighth Circuit's opinion. That court also held in *Martin* that whether a communication constitutes a threat is an issue of fact to be left to the jury.[14] Further, the circuit court in *Martin* held that "[i]f a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue should go to the jury."[15]

■ The reasoning used by the Eighth Circuit is equally applicable to this case. The issue whether a communication is a threat is a question of fact to be left to the jury. Resolution of that issue does not change the district court's task when deciding upon a motion for judgment of acquittal. Our objective is to clarify any uncertainty regarding the province of the jury in a case prosecuted under 18 U.S.C. § 876. The district court did not commit an error of law in submitting the case to the jury.

■ The evidence presented to the jury showed a twenty-year history of a woman, and indeed her family, being harassed by her former boyfriend beyond any reasonable limit. The jury heard evidence regarding past letters and postcards from Taylor. The content of the letters varied, but maintained the central theme of Taylor's love for Mrs. Goldstein. Some letters contained Taylor's desires to replace Mr. Goldstein in Kathleen's life. One letter contained Taylor's doubts over his own mental stability and an apology in advance should Taylor ever take from Kathleen anything that she loved. One letter referred in detail to his knowledge of her child. Certainly at that point, Mrs. Goldstein could reasonably infer that she and her family were being stalked by Taylor. The Goldsteins moved several times, but Taylor always managed to locate them. The 1982 restraining order had no deterrent effect on Taylor. The extent of his harassment was not abated;

he continued harassment of this family for at least an additional 10 years. The facts of this case clearly indicated time for a halt.

Whether enforcement of the restraining order, resulting in some sanction, or provision of treatment for Taylor, would have abated this behavior, we have no way of knowing. Whether this was the jury's perception is not for us to say, but against this abbreviated backdrop of Taylor's past actions, the two greeting cards in question arrived at the Goldsteins' home. In those cards, Taylor categorically states that Mr. Goldstein will die; the ambiguity, if any, is in the meaning of "cerebral vascular accident", not whether Mrs. Goldstein could reasonably consider this a threat. Taylor advised Mrs. Goldstein that she would be "widowed" in 1990 and that Taylor would be there for her in her "widowhood". These cards clearly reflect the sentiment that Mr. Goldstein would soon disappear from Kathleen's life, and that Taylor would subsequently occupy that vacancy.

Viewed in its entirety, this record contributes to a possible perception that a restraining order, duly obtained from a court of law, is no protection whatsoever and, in fact, if unenforced, encourages a wrongdoer to continue and increase his wrongdoing with impunity. When law-abiding citizens resort further to the courts to present evidence such as that described here, and have their fears ignored and their pleas disregarded as unreasonable, especially in the face of a determination otherwise by a panel of their peers, such an undesirable perception of failure of justice is all but guaranteed. The offense complained of is commonplace. The courts are empowered to provide a remedy based on the facts of the individual case. Failure to provide a remedy in circumstances such as these leaves no alternative for protection of law-abiding citizens except by the slow process of enactment of statutes of undue particularization of proscribed actions and overbroad provisions of sanction. Worse, such

---

**12.** 691 F.2d 1235 (8th Cir.1982).

**13.** *Id.* at 1239.

**14.** *Id.* at 1240.

**15.** *Id.*

a failure of justice can result in tempting otherwise law-abiding citizens to take the law into their own hands. Courts cannot contribute to the momentum of such a concept. It is inescapable that the communications referred to in the indictment would be interpreted by a reasonable recipient as a threat. The sufficiency of the evidence in that regard is overwhelming. The trial court's finding otherwise is clearly erroneous.

### b. Grant of Defendant's Motion

■ Since the district court did not err in sending the case to the jury, we must examine the subsequent grant of Taylor's motion for judgment of acquittal. When considering *any* motion for judgment of acquittal, the district court must perform the analysis required by the jurisprudence of this circuit, as outlined above. In other words, the district court must decide whether the relevant evidence, along with all reasonable inferences, viewed in a light most favorable to the Government *could* be accepted by a jury as adequate and sufficient to support a conclusion of the defendant's guilt beyond a reasonable doubt. The district court may not sidestep its responsibility to properly analyze a motion for judgment of acquittal by simply deciding a key factual issue as a matter of law. In this case, the district court did not perform the analysis mandated by previous applicable decisions.

Our independent review of the grant of Taylor's motion for judgment of acquittal leads us to hold that the motion was improvidently granted. When the evidence is viewed in a light most favorable to the Government, along with all reasonable inferences in the Government's favor, the jury could accept the evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.

The district court may not substitute its own subjective interpretation of the evidence for that of the jury.[16] In his order, the trial judge stated that he did not quarrel with the jury verdict, but questioned the rule of law by which he submitted the case to the jury. Thus on one hand, the court does not argue with the jury's decision that the Government had proved that Taylor had sent threatening communications through the mail and had established Taylor's guilt. On the other hand, the district court states that Taylor's first motion for judgment of acquittal should have been granted because the cards were ambiguous. The statements are inconsistent. The conclusion is inescapable that the district court did substitute its own *subjective* view of the evidence for that of the jury. The Supreme Court stated in *Glasser v. United States*[17] that the jury's verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."[18] We hold that the record contains substantial evidence to support the jury verdict of guilty.

### Reassignment and Sentencing

■ The Government has asked that this case be reassigned to another judge for sentencing in the event that the jury verdict is reinstated. Our review of the record in this case, and the factors set forth by this circuit in *United States v. Torkington*,[19] lead us to conclude that reassignment is appropriate. Because of statements made by the trial judge indicating a perceived predisposition regarding sentencing, this case is remanded for assignment to another district judge for sentencing.

### Conclusion

The district court's order granting Taylor's motion for judgment of acquittal is reversed and the jury verdict reinstated. The case is remanded to the district court for reassignment to another district judge. The case is also remanded to the district court so that, after reassignment, the appropriate sentence may be imposed as man-

---

16. *Varkonyi,* 611 F.2d at 85.

17. 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

18. *Id.* at 80, 62 S.Ct. at 469.

19. 874 F.2d 1441, 1447 (11th Cir.1989).

dated by the Sentencing Commission Guidelines.

REVERSED AND REMANDED.