**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Kenneth W. BARFIELD,**
**Defendant–Appellee.**

No. 92–6217.

United States Court of Appeals,
Eleventh Circuit.

Sept. 2, 1993.

Deborah A. Griffin, Asst. U.S. Atty., Mobile, AL, Thomas E. Booth, Dept. of Justice, Washington, DC, for plaintiff-appellant.

Thomas Boller, Mobile, AL, for defendant-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and ATKINS *, Senior District Judge.

KRAVITCH, Circuit Judge:

The scope of the federal obstruction of justice statute, 18 U.S.C. § 1503,[1] is the primary issue in this case. The government appeals the district court's grant of a judgment of acquittal, which was entered pursuant to Fed.R.Crim.P. 29(c) after the jury returned a guilty verdict. We REVERSE and REMAND.

## BACKGROUND

Appellee Kenneth Wayne Barfield was a confidential informant (CI) for the government, specifically the Drug Enforcement Administration (DEA). Barfield worked for the DEA in connection with its investigation of Donald Flores for growing marijuana. Barfield had met Flores while both men were incarcerated in federal prison. As part of his role as a CI, Barfield surreptitiously taped conversations he had with Flores. Barfield also allegedly helped Flores and another man plant marijuana. The government indicted Flores for possession, manufacture, and distribution of marijuana, largely as a result of the information and evidence obtained by Barfield.

After Flores was indicted, Barfield contacted Flores's attorney, Wesley Blacksher. Barfield told Blacksher that he had information concerning the case against Flores, and gave Blacksher a hand-made map of the property on which Flores was growing marijuana. The map allegedly demonstrated that the search warrant used by the DEA did not cover the property from which the marijuana was actually seized. The next time they met, Barfield told Blacksher in an unsworn statement that Flores was not involved in marijuana growing and that Barfield could prove it. Blacksher later testified that Barfield also claimed that the government was hiding evidence.

Subsequently, Blacksher arranged for Barfield to give a sworn statement to a court reporter. In that statement Barfield made assertions that were inconsistent with what he had told DEA agents earlier. For example, Barfield stated that he had not seen Flores grow marijuana and that he had never helped Flores grow marijuana. In addition to these statements, Barfield also told Blacksher about a letter written by a federal judge that described Barfield as the least credible witness that judge had ever seen. Barfield spoke with and attempted to speak with Blacksher on numerous other occasions.

After learning about Barfield's contacts with Blacksher, the government decided not to call Barfield as a witness in Flores's trial. Furthermore, because Barfield was the only person who could authenticate the tape re-

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1503.

corded conversations between Flores and Barfield, the government did not introduce those tapes at Flores's trial as it was concerned that Blacksher would have sought to impeach Barfield with the information Barfield had given him. Because the tapes were not introduced and all of the evidence pertaining to one particular offense was contained on the tapes, the government dismissed one of the charges against Flores. Flores was convicted on two drug offenses.

The government subsequently indicted Barfield, alleging that he violated 18 U.S.C. § 1503 by "providing false information to the attorney representing Donald Lee Flores so that such false information could be used to impeach Kenneth Wayne Barfield's testimony in the trial of" Flores.[2] In short, the government claimed that Barfield's conduct in giving the false statements to Blacksher was designed to provide Blacksher with impeachment evidence, thus making Barfield's testimony less credible, rendering Flores's conviction less likely and impeding the due administration of justice. Concerning appellee's motives, Blacksher testified that during the course of his contacts with Barfield, Barfield sought money from Flores. The government alleged that these requests were part of the motive for Barfield's action. Barfield contended that the DEA had instructed him to obtain information about Flores's assets for possible forfeiture and his requests for money stemmed from that instruction.

A jury found Barfield guilty of violating 18 U.S.C. § 1503. Barfield moved for a new trial, claiming that the evidence was insufficient to support a conviction. The district court treated the motion as one for acquittal and granted it. 781 F.Supp. 754. According to its order, the district court issued the judgment of acquittal on two primary grounds: 1) that giving false/inconsistent statements is insufficient to warrant a section 1503 conviction; and 2) that Barfield did not act "corruptly" as required by the statute. The government filed a motion for reconsideration which the court denied. This appeal followed.

**2.** R1–1.

**3.** All decisions of the Fifth Circuit rendered before October 1, 1981, are circuit precedent in the

## DISCUSSION

 When evaluating a motion for judgment of acquittal, the "district court must determine whether the relevant evidence, viewed in a light most favorable to the Government, could be accepted by a jury as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Varkonyi,* 611 F.2d 84, 85 (5th Cir.1980);[3] *see also United States v. Greer,* 850 F.2d 1447, 1450 (11th Cir.1988). The district court must accept all reasonable inferences tending to support the government's case. *United States v. Burns,* 597 F.2d 939, 941 (5th Cir.1979). "Likewise, any conflicts in the evidence are to be resolved in the Government's favor." *United States v. Taylor,* 972 F.2d 1247, 1250 (11th Cir.1992) (citation omitted). In reviewing a district court's disposition of a motion for judgment of acquittal, the appellate court considers the same factors that guided the district court. *Id.* (citation omitted). The appellate court's role in this situation is comparable to its role in considering sufficiency of the evidence, and the district court's decision to grant a judgment of acquittal is entitled to no deference. *Id.* (citations omitted).

 Barfield was convicted of the specific portion of 18 U.S.C. § 1503, known as the omnibus clause, which deals with a person who "corruptly ... endeavors to influence, obstruct, or impede, the due administration of justice." This court has considered this section of § 1503 previously. It is clear that the "omnibus clause is broad enough to encompass 'any act committed corruptly, in an endeavor to impede or obstruct justice.'" *United States v. Thomas,* 916 F.2d 647, 650 (11th Cir.1990) (quoting *United States v. Brand,* 775 F.2d 1460, 1465 (11th Cir.1985)) (citations omitted). In order to obtain a conviction under the omnibus clause, the government must prove that the defendant (1) endeavored, (2) to influence, obstruct or impede the due administration of justice; (3) in a corrupt manner or by threats. *Id.*

Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

The "endeavor" component of the offense "describes any effort or assay" to obstruct justice. *Brand,* 775 F.2d at 1465.[4] Success is not a necessary component of a sufficient section 1503 violation. *Thomas,* 916 F.2d at 651 (citing *Osborn v. United States,* 385 U.S. 323, 333, 87 S.Ct. 429, 434–35, 17 L.Ed.2d 394 (1966)) (citation omitted). In fact, this court has held that "a section 1503 offense is complete when one corruptly *endeavors* to obstruct or impede the due administration of justice; the prosecution need not prove that the due administration of justice was actually obstructed or impeded." *United States v. Silverman,* 745 F.2d 1386, 1395 (11th Cir. 1984) (emphasis in the original).

Concerning the actual conduct prohibited by the statute, an individual may not participate in an activity that is an effort to influence, obstruct, or impede the due administration of justice. "The action taken by the defendant does not need to directly and immediately obstruct justice to be prohibited by section 1503. The defendant's conduct must be such, however, that its natural and probable effect would be the interference with the due administration of justice." *Thomas,* 916 F.2d at 651 (citations omitted).

■ False testimony may provide the basis for a section 1503 conviction. *Thomas,* 916 F.2d at 652. Yet the Supreme Court has stated clearly that not all false or evasive testimony comprises an obstruction of justice. *In re Michael,* 326 U.S. 224, 227–28, 66 S.Ct. 78, 79–80, 90 L.Ed. 30 (1945). In fact, this court has held that perjury alone is insufficient to sustain a section 1503 conviction. *United States v. Perkins,* 748 F.2d 1519, 1528 (11th Cir.1984). "To show an obstruction of justice based on false testimony, the government must establish a nexus between the false statements and the obstruction of the administration of justice. Although, as in any section 1503 prosecution, the government need not show that the false statements actually obstructed justice, it is incumbent on the government to prove that the statements had the natural and probable

effect of impeding justice." *Thomas,* 916 F.2d at 652 (citations omitted).

The Eleventh Circuit considered a section 1503 omnibus clause prosecution in *United States v. Brand,* 775 F.2d 1460 (11th Cir. 1985). The *Brand* defendants tried to convince a witness to sign a statement asserting that the witness knew that the car he bought from the defendants had had the odometer rolled back. The witness refused, stating that all he knew was that the odometer reading was not guaranteed by the defendants. The government had indicated that it would have dropped or reduced the charges against the defendants if they had succeeded in obtaining the witness's signature on the statement. 775 F.2d at 1462. The *Brand* court reversed a section 1503 conviction against the defendants in part because no false statement was ever given to the court or prosecutors, and a false statement may never have been made because the witness did not sign the paper. The *Brand* court also was concerned about the breadth of section 1503 prosecutions signaled by this case. The court opined that attorneys, investigators and others who routinely get people to sign statements could be caught in the section 1503 web. "If [attorneys, investigators, etc.] are to be confronted (as they frequently are), with charges of persons claiming that a statement was false, thus resulting in an obstruction of justice charge even though the statement was never submitted to a prosecutor or to the court, a new wave of cases will be filed by federal or state authorities." 775 F.2d at 1468. The *Brand* court reversed the defendants' section 1503 conviction.

This court construed *Brand* narrowly in *United States v. Fields,* 838 F.2d 1571 (11th Cir.1988). The *Fields* court, in interpreting *Brand,* focused on the non-existence of the false statement. *Fields,* 838 F.2d at 1575. The court stated that the "majority of the *Brand* analysis relies upon the non-existence of a false statement, and not upon the fact

---

4. This is consistent with *United States v. Fields,* 838 F.2d 1571, 1573 (11th Cir.1988), which stated that endeavor means that " 'all the government has to establish is that the defendant should have reasonably foreseen that the natural and probable consequence of the success of his scheme would [obstruct the due administration of justice].' " *Id.* (quoting *United States v. Silverman,* 745 F.2d 1386, 1393 (11th Cir.1984) (citations omitted).

that a false statement was never submitted to the prosecutor or to the court." *Id.*

*Fields* is instructive on whether Barfield's conduct was beyond the scope of section 1503. In that case, Fields and a codefendant Wilhite both were indicted on a firearms violation. Fields asked Wilhite to take full responsibility for the crime and to exculpate Fields completely. Fields convinced Wilhite to go to a lawyer and give a false sworn statement to the effect that Fields was not involved. Wilhite then cooperated with the government and reported Fields's role in obtaining the false statement. The government dismissed the charges against Wilhite in return for his assistance in the obstruction of justice charge against Fields, who was convicted. The Eleventh Circuit framed the question presented to it in Field's appeal as follows: "[D]oes one 'endeavor to obstruct justice' by obtaining or giving a false statement with the intent that it be used in a judicial proceeding when the statement is never used in a judicial proceeding and never given or caused to be given to a prosecutor or other officer of the court?" 838 F.2d at 1573. In this manner, two parts of the *Thomas* test—endeavoring and influencing, obstructing or impeding the due administration of justice—are analyzed as one.

The *Fields* court reasoned that in the case before it "the false statement did exist, and its existence in combination with the circumstances of its existence made it far more likely that the statement would have been produced in court and that justice would be obstructed in this case than in *Brand.* We hold that a false statement need not be actually used in court or delivered to a court officer to satisfy the 'endeavor' element in the obstruction of justice statute.... We note, in addition, that the existence of the false statement materially altered the government's treatment of Wilhite. Its existence frustrated the intent of the grand jury and the prosecutor." 838 F.2d at 1575.

Here Barfield gave Blacksher information that a reasonable trier of fact could conclude was false. Additionally, a reasonable trier of fact could conclude that because Barfield gave the statement in the circumstances that he did, it was very likely that it would be produced in court, although it never was. In fact, Blacksher stated that he planned to introduce the statement in court if need be. Flores was treated differently than he otherwise would have been, which is analogous to Wilhite's altered treatment. This interpretation of *Fields*—that altered treatment is enough to connect perjury to the obstruction of justice—is supported by *Thomas.* In *Thomas,* the court highlighted *Fields* as an example of how a false statement may have the tendency to obstruct justice because the "false statement materially altered [the] government's treatment of a codefendant." *Thomas,* 916 F.2d at 654.

We conclude that *Fields* controls the instant case. Barfield urges that *Fields* is distinguishable from the instant case in part because the accused in *Fields* solicited a false statement from a co-defendant and Barfield was not a co-defendant. We disagree and note that Barfield points to a distinction without a difference. It is clear from a plain reading of the statute that an individual need not be a party to the judicial proceeding in question in order to violate section 1503. *See United States v. Howard,* 569 F.2d 1331, 1335–36 (5th Cir.1978) (upholding conviction of court reporter for selling grand jury transcripts). Barfield endeavored to influence, obstruct or impede the due administration of justice.

■ The final necessary element of a section 1503 violation is that the acts be done corruptly. "Corruptly" describes the specific intent of the crime and can vary in meaning with the context of the prosecution. *Brand,* 775 F.2d at 1465. "Generally, the government must show that the defendant knowingly and intentionally undertook an action from which an obstruction of justice was a reasonably foreseeable result. Although the government is not required to prove that the defendant had the specific purpose of obstructing justice, it must establish that the conduct was prompted, at least in part, by a 'corrupt motive.'" *Thomas,* 916 F.2d at 651 (citations omitted); *United States v. Saget,* 991 F.2d 702, 713 (11th Cir.1993) (same). This view is consistent with that expressed by the former Fifth Circuit in *United States v. Haas,* 583 F.2d 216, 220 (5th Cir.1978).

The *Haas* court held that in the context of section 1503, "corruptly endeavored" basically means an intentional act. "It is interchangeable with the term 'willful.'" *Id.; see also United States v. Ogle*, 613 F.2d 233, 239 (10th Cir.1979) ("'[C]orruptly' does not superimpose a special and additional element on the offense such as a desire to undermine the moral character of a juror. Rather it is directed to the effort to bring about a particular result....").

In its order, the district court concluded that Barfield did not act corruptly in large part because the government never showed that Barfield stood to gain personally from the obstruction.[5] According to Eleventh Circuit precedent, this is not the appropriate standard with which to evaluate the "corruptly" requirement. As previously discussed, "the government must show that the defendant knowingly and intentionally undertook an action from which an obstruction of justice was a reasonably foreseeable result." *Thomas*, 916 F.2d at 651; *see also United States v. Cioffi*, 493 F.2d 1111, 1119 (2d Cir.1974) (no requirement that money or other consideration be received before endeavor can be considered corrupt).

The "corrupt" requirement—which may also be described as the knowing, intentional or willful requirement—acts as a staunch barrier against prosecutorial overreaching and improper expansion of section 1503. This requirement protects those individuals who are, for example, (1) attempting to clarify their statements; (2) stating something that they believe is the truth but that is objectively false; or (3) in some other way not intending to obstruct the due administration of justice.[6] Although the net of section 1503 is wide, it is not limitless.

In the instant case, however, there is sufficient evidence in the record from which a reasonable trier of fact could conclude that Barfield was acting corruptly—in a knowing, intentional and willful manner—when he made the false statements. For example, Barfield told Blacksher that Flores was not involved in the marijuana scheme. Blacksher testified that Barfield told him that Flores "didn't have anything to do with" the marijuana that was the subject of Flores's indictment and that Flores was innocent.[7] In contrast, Barfield testified in his own defense that he never said such a thing to Blacksher and Barfield implied that if he had said such a thing, he would have been lying:

> Q: And didn't you tell Wesley Blacksher on July 27th in person at your office again that you would show that Donald Florez [sic] was not involved?
>
> A: Just the contrary.[8]

Barfield's own testimony on the stand indicates that he knew that the statement that Flores was uninvolved and innocent was untrue. A reasonable trier of fact could conclude that Blacksher was telling the truth about Barfield making the statements. Barfield knew that the statements were false. Accordingly, Barfield acted in a knowing, intentional and willful manner when he made the false statements.[9] This satisfies the statutory requirement of acting "corruptly."

Viewed in the light most favorable to the government, we conclude that the prosecution's evidence that Barfield corruptly endeavored to influence, obstruct or impede the due administration of justice could have been accepted by a jury as adequate and sufficient to support the conclusion that the defendant was guilty beyond a reasonable doubt. *Taylor*, 972 F.2d at 1250. As such, the district

---

5. R1–40 at 11.

6. In this same vein, the Eighth Circuit has stated that "[i]t is not an unlawful attempt to influence or impede a witness, or the due administration of justice, for one to seek to obtain from a witness a statement of the facts as he believes them to be, without the exercise of undue influence, even though such a statement may conflict with prior testimony given by the one making the statement." *Harrington v. United States*, 267 F. 97 (8th Cir.1920).

7. R2–77–78; R2–85.

8. R3–335–36.

9. In the context of a § 1503 prosecution, "intent may be inferred by a jury from all the surrounding facts and circumstances." *United States v. Petzold*, 788 F.2d 1478, 1485 (11th Cir.1986).

court erred in granting Barfield's motion for a judgment of acquittal.

## CONCLUSION

Accordingly, we REVERSE the judgment of acquittal entered by the district court and REINSTATE the jury verdict. We RE-MAND the case to the district court so that the appropriate sentence may be imposed as mandated by the Sentencing Guidelines."