[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/08/99
THOMAS K. KAHN
CLERK

_____

No. 98-2881

_____

D.C. Docket No. 4:97-cr-79-RH

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

KRISTOPHER DOUGLAS WARD,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(December 8, 1999)**

Before BLACK and WILSON, Circuit Judges, and RONEY, Senior Circuit Judge.

WILSON, Circuit Judge:

The United States appeals a judgment of acquittal granted on three counts of a six-count indictment charging Kristopher Douglas Ward with bankruptcy fraud and money laundering, after a jury found him guilty on all six counts. For the reasons discussed below, we affirm Ward's acquittal on two of the bankruptcy fraud counts and reverse his acquittal on the money laundering count. We remand this case for sentencing on that count.

## I. BACKGROUND

Appellant Kristopher Douglas Ward was engaged in the logging business. He owned Action Industry, a sole proprietorship which provided hydraulics and supplies and performed hydraulic repairs for other loggers. After financial setbacks, Ward formed a corporation, Action Industry Trust, Inc., that would take over the sole proprietorship. Ward executed a bill of sale transferring the assets of the sole proprietorship to the new corporation. He then filed a personal petition for bankruptcy under Chapter 7 of the Bankruptcy Code. The government indicted Ward and charged him with four counts of bankruptcy fraud for making false statements under oath on his bankruptcy petition, one count of concealing assets and one count of money laundering in connection with certain concealed assets.

A jury found Ward guilty on all six counts charged in the indictment, including the one count of concealment of assets in violation of 18 U.S.C. § 152, four counts of making a false oath in a bankruptcy proceeding in violation of 18 U.S.C. § 152, and one count of money laundering in violation of 18 U.S.C. § 1956. Ward moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). The district court denied the motion as to the false oath charges in Counts I, II, and III of the Indictment[1] and granted the motion as to Counts IV, V and VI. In Count IV of the Indictment, the government alleged that Ward knowingly and fraudulently made a false oath that he sold Action Industry in 1992. Count V alleged that Ward knowingly and fraudulently made a false oath that his gross income for 1991 and 1992 was $15,000. Count VI alleged that Ward knowingly and willfully conducted or attempted to conduct monetary withdrawals involving proceeds of a specified unlawful activity with the intent to conceal and disguise the location, source, ownership and control of these proceeds. The government appealed the district court's grant of Ward's motion for judgment of acquittal on Counts IV, V and VI.

## II. DISCUSSION

---

[1]     Defendant has not appealed the district court's denial of his motion for judgment of acquittal pertaining to Counts I, II and III. We shall briefly discuss these counts inasmuch as they are necessary for an understanding of the record on appeal and insofar as they pertain to Count VI which charges money laundering. Our reasoning regarding Count VI for money laundering is premised on the sufficiency of evidence for Count III.

A.    STANDARD OF REVIEW

This Court has jurisdiction to review a final decision of a district court.  See 28 U.S.C. § 1291.  In considering a motion for the entry of judgment of acquittal under Federal Rule of Criminal Procedure 29(c), a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction. *See United States v. Sellers*, 871 F.2d 1019, 1020 (11th Cir. 1989).  The district court must view the evidence in the light most favorable to the government. *See id*. (citing *Glasser v. United States*, 315 U.S. 60, 80 (1942), *superceded by rule on other grounds, Bourjaily v. United States,* 483 U.S. 171 (1987)).  The court must resolve any conflicts in the evidence in favor of the government, *see United States v. Taylor,* 972 F.2d 1247, 1250 (11th Cir. 1992), and must accept all reasonable inferences that tend to support the government's case. *See United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979).[2]  The court must ascertain whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *See Sellers*, 871 F.2d at 1021 (citing *United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987)).  "'It is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of

---

[2]    All decisions rendered by the former Fifth Circuit prior to October 1, 1981 are precedent in this Court.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

4

fact could find that the evidence establishes guilt beyond a reasonable doubt.'" Sellers, 871 F.2d at 1021 (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc*), *aff'd on other grounds*, 462 U.S. 356 (1983)). A jury is free to choose among reasonable constructions of the evidence. *See Sellers*, 871 F.2d at 1021. The court must accept all of the jury's "reasonable inferences and credibility determinations." *See id. (citing United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir. 1984)).

In reviewing the district court's determination, this Court also applies the foregoing standards. Our evaluation is comparable to a review for the sufficiency of the evidence to sustain a conviction. *See United States v. Barfield*, 999 F.2d 1520, 1522 (11th Cir. 1993) (citation omitted). We do not afford any deference to the district court's decision. *See id.; see also United States v. Greer,* 850 F.2d 1447, 1450 (11th Cir. 1988) (district court's decision that the evidence was insufficient to support the jury's verdict is a legal issue entitled to no deference on appeal).

B.      CONCEALMENT OF ASSETS AND FALSE OATHS

A person can violate 18 U.S.C. § 152 if he "knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor" or if he "knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11."[3] *See* 18 U.S.C. § 152(1), (2).  The false oath must pertain to a material matter.  *See United States v. Key*, 859 F.2d 1257, 1261 (7th Cir. 1988) (citations omitted).   The government proved beyond a reasonable doubt that Ward concealed assets and made false oaths regarding material matters as charged in Counts I, II and III of the Indictment, and the jury so found.

Count I of the Indictment alleged that Ward knowingly and fraudulently failed to disclose to the bankruptcy court trustee the existence of certain bank accounts that were part of the bankruptcy estate.  The record reflects that as of January 29, 1993, the date he filed his petition for bankruptcy, Ward had open and active accounts in his name at Lafayette County State Bank and Citizens Bank that contained some money. He concealed these accounts from the trustee by failing to disclose them.

---

[3]      Title 11 of the United States Code governs bankruptcy proceedings.  See 11 U.S.C. § 103.

Count II alleged that Ward knowingly and fraudulently made a false statement under oath at a meeting with creditors on March 2, 1993 that he had no connection with Action Industry except that his wife purchased it. Ward operated Action Industry, the sole proprietorship, as well as Action Industry Trust, Inc., the new corporation that acquired the sole proprietorship's assets. He was substantially involved in running their day to day affairs with his wife, including paying debts, signing invoices and checks, and deriving income from both entities. He had a significant connection with Action Industry and Action Industry Trust, Inc., which was a perpetuation of the sole proprietorship. Thus, his statement that he had no connection with Action Industry was false.

Count III alleged that Ward made a false statement under oath on bankruptcy Schedule B that he had no checking, savings or other financial accounts nor any accounts receivable or any inventory. Yet, there is evidence that Ward had open and active accounts at Lafayette County State Bank and Citizens Bank containing almost $200 as well as over $14,000 in accounts receivable. Ward collected a relatively small portion of the accounts receivable but used the accounts as collateral to run the new corporation. The funds in these accounts were not enormous and were collateralized. However, according to expert testimony, Ward was still obligated to disclose them to

7

the bankruptcy court. This count is the "specified unlawful activity" upon which the money laundering count is premised.

The district court was correct in concluding that sufficient evidence supported the jury's guilty verdict on Counts I, II and III and therefore denying Ward's motion for judgment of acquittal on those counts.

Count IV alleges that Ward made a false oath on Schedule I of his bankruptcy form by stating that he sold Action Industry in 1992. The district court granted Ward's motion for acquittal on this charge. We determine that it was correct in so doing. The record contains insufficient evidence upon which a reasonable jury could rely to find Ward guilty beyond a reasonable doubt. The government's theory of Count IV is that the sale of Action Industry was a sham; it did not occur. In support of this theory, the government contends that Ward made inconsistent statements on several occasions about the alleged sale. He stated that he sold it to his wife for $8,000 and he also stated that he sold it to his brother for $8,000. The government further contends that Ward's bank accounts and tax returns contained no evidence of the $8,000 sale. The government failed to prove that the sale did not occur. On December 23, 1992, before he filed his bankruptcy petition, Ward executed a bill of sale wherein he conveyed the assets of Action Industry for $8,000 to Action Industry

8

Trust, a valid Florida corporation.[4]  The $8,000 was paid to Citizen's Bank, the lienholder on the assets and inventory.  The district court correctly granted Ward's motion for judgment of acquittal on Count IV.

Count V alleges that Ward knowingly and fraudulently made a false oath in his Statement of Financial Affairs by stating that his yearly gross income for 1991 was $15,000 and his yearly gross income for 1992 was $15,000.  The question on the form asked for gross income.  The question also asked for the source.  For each year, next to the term "source," appears the term "earnings."  Additionally, for each year, the figure "$15,000" appears next to the term "amount."  The district court determined that this was not a false statement but it was clearly nonresponsive.  Ward  testified that he knew the difference between gross and net income and the record demonstrates that his gross income was substantially higher than $15,000.  However, there is no evidence concerning whether his earnings were actually $15,000. Additionally, Ward only completed the worksheets from which his attorney generated the form at issue.  These worksheets were not in evidence because they were destroyed in the normal course of business.  The record demonstrates that the jury did not have sufficient evidence from which it could conclude that this statement was false.  The government

---

[4]  In the corporations's Articles of Incorporation, Ward's wife is listed as the president and secretary/treasurer and his brother is listed as a shareholder.  In light of the totality of the evidence and the government's burden of proof, the fact that the corporation was formed after the sale of Action Industry does not render the sale a sham.

failed to sustain its burden of proving beyond a reasonable doubt that Ward acted knowingly and fraudulently.

C.    MONEY LAUNDERING

Count VI charges Ward with money laundering. It alleges that Ward knowingly and willfully conducted financial transactions involving proceeds of a specified unlawful activity with the intent to conceal and disguise the location, source, ownership and control of the proceeds. 18 U.S.C. § 1956 proscribes the laundering of monetary instruments. It provides in pertinent part: "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . ." commits a federal offense. 18 U.S.C. § 1956(a)(1)(B)(i); *see also United States v. Suba,* 132 F.3d 662, 674-75 (11th Cir. 1998) (discussing statute) *United States v. West,* 22 F.3d 586, 590-91 (5th Cir. 1994) (discussing elements of money laundering).

"[T]he term 'knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity' means that the person

10

knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony . . . . " 18 U.S.C. § 1956(c)(1). There is record evidence upon which a reasonable jury could have relied to conclude that the government proved this element beyond a reasonable doubt.

"The term 'transaction' . . . with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, . . . or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected." 18 USCA §1956(c)(3). The government proved that Ward engaged in monetary deposits and withdrawals from the concealed Lafayette County State Bank account as well as the First Federal Savings Bank which involved the concealed account receivable and the sole proprietorship. These constitute "transactions" under this section.

The term "specified unlawful activity" includes bankruptcy fraud in violation of 11 U.S.C. § 152. *See* 18 U.S.C. § 1956(c)(7)(D); *see also West*, 22 F.3d at 591 n.12 (construing code section). Since there is sufficient evidence to support Count III, the money laundering count is still viable notwithstanding the lack of evidence for Counts IV and V.

The language of the district court's order itself leads to the inescapable conclusion that there is sufficient evidence to support the jury's verdict. For instance, the court concluded that "[t]he record supports the assertion that some comparatively small amount was collected on those [unlawfully concealed] accounts and deposited to the accounts from which the withdrawals at issue eventually were made. This provides some support for the government's position." The order goes further to conclude that Ward was able to continue to use his concealed Lafayette County State Bank account to:

> obtain and use cash derived from accounts receivable of the sole proprietorship to pay sole proprietorship creditors (and thus keep them satisfied so that they would continue to deal with the new corporation), and to funnel into the new corporation a modest amount of cash from accounts receivable of the sole proprietorship, thus funding the new corporation's operations at least to a limited extend with sole proprietorship assets. The amounts were not large, but they may have been critical to the ability of the new corporation to get up and running.

> The court further reasoned:

> the small but not insignificant funds derived from sole proprietorship accounts receivable and used by the corporation helped it get up and running and thus contributed to its later operations. Such an infusion of case into a business might, under some circumstances and for at least some time, be sufficient to render all the corporation's revenues 'proceeds' of specified unlawful activity, even after the infused cash was spent.

However, the court's reasoning is unpersuasive in its conclusion that:

12

[e]ven in such circumstances, there presumably would be a point at which the taint would be gone from long continuing and otherwise lawful operations. Here the very small amount of the improper infusion, the great predominance of legal capital and revenues, and the passage of time take this case beyond the point at which the taint was gone.

No legal authority supports the district court's notion that the value of the proceeds is particularly significant to this analysis, or its theory that funds from unlawful activities can lose their taint under these certain circumstances. Although the district court's rationale may be logically persuasive, it is without a legal basis.

To obtain a conviction under § 1956(a)(1)(B)(i), the government must prove beyond a reasonable doubt "that the party engaged in the transaction knew that the funds used represented, in whole or in part, proceeds of a specified unlawful activity." *United States v. Cancelliere,* 69 F.3d 1116, 1119 (11th Cir. 1995)[5]. Section 1956(a)(1)(B)(i) permits convictions "where the funds involved in the transaction are derived from a commingled account of which only a part comes from 'specified unlawful activities.'" *Id*. at 1120. For example, when proceeds from a specified unlawful activity are deposited into an account "at some indefinite point," the government need not trace the origin of all funds in the account to ascertain "exactly which funds were used for what transaction." *Id*. 1119-20. The district court's

---

[5]     The trial court acknowledged this holding but reasoned that "despite this principle, . . . at some point the connection becomes too attenuated between a small, comparatively nominal deposit and the balance in the account months later."

13

analysis of the nominal nature of the funds at issue and the possibility that they could become untainted necessarily compels the government to trace the origins of the funds and ascertain "exactly which funds were used for what transaction." This is contrary to *Cancelliere*. *See id*. at 1120. Moreover, the district court's rationale belies Congressional intent. Congress did not intend for participants in unlawful activities to escape conviction for money laundering "simply by commingling funds derived from both 'specified unlawful activities' and other activities." Commingling of funds "is itself suggestive of a design to hide the source of ill-gotten gains . . . ." *Id.* (quoting *United States v. Jackson*, 935 F.2d 832, 840 (7th Cir. 1991)).

The district court's theory that the passage of time and the large infusion of legal proceeds remove the taint from the illegal proceeds defeats the purpose of the money laundering statute and promotes money laundering schemes. Because money is fungible, the government must prove only that the tainted proceeds were commingled with other funds. *See United States v. Garcia*, 37 F.3d 1359, 1365 (9th Cir. 1994) (since money is fungible, segregation of proceeds defeats statutory purpose). There is evidence that Ward commingled proceeds from the concealed Lafayette County State Bank account and proceeds collected from Action Industry's concealed accounts receivable with legally derived funds from the new corporation. The district court attempted to segregate the tainted funds in the commingled account

and in so doing, determined that their taint was lost at some point. However, the tainted funds could not be easily divided from legal funds as the district court suggests. When money is commingled, "the illicitly-acquired funds and the legitimately-acquired funds . . . cannot be distinguished from each other . . . ." *United States v. Moore*, 27 F.3d 969, 976-77 (4th Cir. 1994) (interpreting 18 U.S.C. § 1957). The illicit funds cannot, in the words of the district court, become "too attenuated" or "turn over too many times" so that no part of the funds in the accounts can be said to be derived from amounts collected on the sole proprietorship. Once proceeds become tainted, they cannot become untainted.

The value of the concealed property is not an essential element of 18 U.S.C. § 152. *See United States v. Grant,* 971 F.2d 799, 808 (1st Cir. 1992); *Kanner v. United States,* 21 F.2d 285, 286 (2d Cir. 1927). The district court erroneously focused on the nominal value of the concealed assets in concluding that the funds at issue were not laundered. The value of the funds at issue should not be confused with the government's burden of proving that the funds involved were proceeds of a crime. This implicates the design element of the money laundering statute which requires proof "that the funds used in the charged transaction were derived in substantial measure from 'specified unlawful activities' rather than from other legal or illegal conduct." *Jackson*, 935 F.2d at 840; *United States v. Garcia-Emanuel*, 14 F.3d 1469,

15

1474 (10th Cir. 1994) (discussing design element). However, there is no requirement that a "substantial portion" of the funds be derived from a specified unlawful activity as implied by the district court. *See United States v. Jackson,* 983 F.2d 757, 768 (7th Cir. 1993) (discussing *Jackson*, 935 F.2d at 840). The government met its burden of proving that the funds used in several of the transactions listed in Count VI of the Indictment were derived in "substantial measure" from bankruptcy fraud.

### III.  CONCLUSION

The evidence was insufficient for a reasonable jury to have found Ward guilty of making false oaths when stating that he sold Action Industry or when stating that his gross income for the years 1991 and 1992 was $15,000 respectively. However, there was sufficient evidence from which a reasonable jury could have found Ward guilty of making a false oath that he had no bank accounts or accounts receivable and engaging in financial transactions involving those concealed accounts in violation of the money laundering statute. Accordingly, we AFFIRM the district court on Counts IV and V and REVERSE and REMAND for sentencing on Count VI.

AFFIRMED IN PART and REVERSED IN PART.