[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16405
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00073-SCB-TBM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAURICE WILLIAMS,
a.k.a. Reese,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 6, 2017)

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Maurice Williams appeals his convictions for sex trafficking of a minor by force, threats of force, fraud, or coercion and for conspiracy to commit sex trafficking of a minor by force, threats of force, fraud, or coercion.  On appeal, he argues that the evidence was insufficient for the jury to convict beyond a reasonable doubt.[1]  After careful review of the record and the parties' briefs, we affirm.

## I.

The district court's denial of "motions for a judgment of acquittal will be upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt."  *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000) (per curiam).  Where the issue is properly preserved, "[t]he district court's decision on sufficiency of the evidence is entitled to no deference."  *United States v. Taylor*, 972 F.2d 1247, 1250 (11th Cir. 1992). The standard of review is de novo, but we view the evidence "in the light most favorable to the government, . . . drawing all reasonable factual inferences in favor of the jury's verdict."  *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009).

---

[1] Because Williams moved for a judgment of acquittal after the close of the government's case, and then for a new trial after the jury's verdict, he has preserved the sufficiency issue for appeal. *United States v. Williams*, 144 F.3d 1397, 1401 (11th Cir. 1998); *Cf. United States v. Bichsel*, 156 F.3d 1148, 1150 (11th Cir. 1998).

## II.

A defendant commits the offense of sex trafficking of a minor by force, fraud, or coercion if he knowingly, in or affecting interstate commerce, "recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person . . . knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, [or] coercion will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a).[2] The punishment under § 1591 ranges from a mandatory minimum of 15 years to a maximum of life imprisonment "if the offense was effected by means of force, threats of force, fraud, or coercion." *Id*. § 1591(b)(1). In addition, "[w]hoever conspires with another to violate section 1591 shall be fined . . ., imprisoned for any term of years or for life, or both." *Id*. § 1594(c).

For purposes of § 1591, "coercion" is defined as (1) "threats of serious harm to or physical restraint against any person;" (2) "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person"; or (3) "the abuse or threatened abuse of law or the legal process." *Id*. § 1591(e)(2). "Serious harm," in turn, is "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the

---

[2] This is the language of the statute at the time of Williams's alleged conduct in 2014.

3

surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." *Id.* § 1591(e)(4).

### III.

The evidence was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Williams violated the "force, threats of force, fraud, or coercion" provision of 18 U.S.C. § 1591(a) for each of the six counts. With regard to Counts 2, 3, 4, 5, and 6, the substantive sex-trafficking counts, a reasonable juror could conclude that Williams acted knowing, or in reckless disregard of the fact, that force, threats of force, fraud, or coercion would be used to cause the victims to engage in commercial sex acts. With regard to Count 1, the conspiracy to commit sex-trafficking count, a reasonable juror could conclude that Williams conspired with his co-defendant to use force, threats of force, or coercion to engage the victims in commercial sex acts.

Testimony at trial established that minors who come from broken homes, drop out of school, and run away are more susceptible to trafficking because those circumstances are the very reasons why the victims are targeted and recruited; each of Williams's victims dealt with some combination of those circumstances. B.F., the victim named in Count 2, testified that she was raised by a single mother and dropped out of school in ninth grade after a sexual assault. D.J., the victim named

4

in Counts 3 and 6, also testified that she was raised by a single mother and stated that she quit school in eighth grade when she ran away from home. A.L., the victim named in Count 4, testified that she dropped out of school in eleventh grade, that her mother was in jail on multiple occasions, and that she spent time in Child Protective Services. A.K., the victim named in Count 5, testified that she was expelled from school in seventh or eighth grade, and that her mother lost custody of her, causing her to grow up with her grandmother, and in foster care, from which she frequently ran away because she was separated from her brothers. This testimony supports a conclusion that each of the victims was particularly susceptible to targeting and recruiting for sex trafficking.

In addition, the government presented evidence that Williams and his co-defendant used force in the form of physical violence against some victims in their sex-trafficking operation and that other victims knew about it. A.L. testified to hearing "screaming," then seeing Williams grabbing D.J. to keep her from leaving a hotel room and "punching [D.J.] in the [hotel room's] bathroom" while A.K. was there. A.K. testified that Williams's co-defendant engaged in physical altercations with her resulting in injuries to her "face, eyes, nose, [and] lip." From these incidents, a reasonable jury could have concluded that victims feared serious harm, in the form of physical injury, if they did not continue the prostitution.

5

The evidence could also lead a reasonable juror to conclude that Williams coerced the victims through emotional, psychological, and financial means. Specifically, the government presented evidence that D.J. and Williams were in a sexual relationship, that she really cared about Williams, and that she did not want to be in court. She also referred to him as "Daddy" in text messages. Williams promised that he would help the victims make money; take care of them; buy them food, clothing, and phones; provide them with marijuana; and pay for them to have their hair and nails done and to have whatever they needed for their acts of prostitution. Further, B.F. testified that she, Williams, and D.J. talked about using the money they made from prostitution to buy a house together. A reasonable jury could have concluded from this evidence that the victims feared that stopping the prostitution would result in serious harm, in the form of losing Williams's emotional, psychological, and financial support.

## IV.

Based on this evidence, a reasonable jury could convict Williams of the five counts of sex trafficking of a minor by force, threats of force, fraud, or coercion and the one count of conspiracy to commit sex trafficking by force, threats of force, fraud, or coercion. The evidence shows that each victim's background made her particularly susceptible to sex trafficking, that after the victims started working for Williams he refused to let one victim leave a hotel room and punched her there

in front of two other victims, and that he established significant psychological, emotional, and financial ties to the victims.  Thus, viewing the facts, and all reasonable inferences, in the light most favorable to the government, *see Jiminez*, 564 F.3d at 1284, a reasonable jury could have concluded that Williams knew or was in reckless disregard of the fact that his conduct caused the victims to believe that stopping prostitution would result in harm so serious that it would compel a reasonable person of the victims' backgrounds and circumstances to perform or continue performing the commercial sex acts to avoid that harm, *see* 18 U.S.C. § 1591, and that Williams conspired with his co-defendant to engage in this conduct.

**AFFIRMED.**