[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 5, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12421
Non-Argument Calendar
_____

D. C. Docket No. 04-00054-CR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES LARON KNIGHT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(January 5, 2007)**

Before BLACK, HULL and MARCUS, Circuit Judges.

PER CURIAM:

James Laron Knight appeals his conviction and 292-month sentence for

conspiracy to possess with intent to distribute more than 20 kilograms of cocaine,

in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A).  After review, we affirm.

## I.  BACKGROUND

The grand jury indicted Knight and a codefendant, Michael Lee, for conspiracy to possess with intent to distribute "more than 20 kilograms of cocaine," in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A).  Under § 841(b)(1)(A), the maximum sentence for a drug conspiracy involving over 5 kilograms of cocaine is life imprisonment.  Thus, the offense charged in Knight's indictment carried a statutory maximum of life.  Knight pled not guilty and went to trial.

During the jury trial, several government witnesses testified that Knight supplied cocaine and crack cocaine to individuals in Mobile, Alabama, between 1996 and 2001, often using his codefendant Lee to transport the drugs.[1]  For example, Roderick Packer testified that he had purchased between 50 and 75 kilograms of cocaine from Knight, a lot of which Packer then converted to crack cocaine, sometimes with Knight's help.  Three of Packer's street dealers, Michael Jefferson, Roderick Johnson and Paul Johnson, testified that Packer obtained his drugs from Knight.  Each witness recounted particular transactions in which

---

[1]Knight was charged with possessing cocaine, that is, cocaine in powder form.  However, during the trial, evidence was presented that Knight also trafficked in cocaine base, commonly known as crack.  In this opinion, we refer to cocaine powder as cocaine and cocaine base as crack cocaine.

Knight supplied Packer with cocaine, which was then converted to crack cocaine. Jefferson also testified that Knight once had Lee deliver two kilograms of crack cocaine to Jefferson in Mobile.

At the conclusion of the evidence, the district court gave the jury a special verdict form. The district court instructed the jury that, if it found Knight guilty, it should also find beyond a reasonable doubt the amount of cocaine and crack cocaine that was the object of the conspiracy. The jury returned a guilty verdict, finding that the conspiracy involved 50 kilograms of cocaine and 20 kilograms of crack cocaine.

The presentence investigation report ("PSI") noted the jury's findings regarding the quantity of cocaine and crack cocaine. The guidelines assign a base offense level of 36 for 50 kilograms of cocaine and a base offense level of 38 for more than 1.5 kilograms of crack cocaine. See U.S.S.G. § 2D1.1(c)(1), (c)(2). The PSI used the relevant conduct guideline, U.S.S.G. § 1B1.3, and assigned Knight a base offense level of 38 based on the jury finding as to the crack cocaine. With a total offense level of 38 and a criminal history category of III, Knight's guidelines range was 292 to 365 months.

On November 23, 2004, the district court sentenced Knight to a 292-month sentence under the then-mandatory guidelines scheme. Knight appealed, and this

Court scheduled his case for oral argument. Prior to oral argument, however, the parties jointly moved to remand for resentencing and for waiver of oral argument. This Court granted the parties' motion.

On remand, the district court held a sentencing hearing on April 12, 2006. Knight objected to the district court's use of the jury's findings regarding the crack cocaine to calculate his guidelines range. Specifically, Knight argued that, because these facts about the crack cocaine were not charged in his indictment, the jury's special verdict findings were an improper variance from the indictment. Knight also argued that his original 292-month sentence was disparate from sentences received by his co-conspirators.

The district court overruled Knight's objections, concluding that the jury's drug quantity findings were advisory and were consistent with the court's own recollection of the evidence at trial. The district court calculated Knight's offense level as 38 based on a drug quantity of more than 1.5 kilograms of crack cocaine. See U.S.S.G. § 2D1.1(c)(1). With a total offense level of 38 and a criminal history category of III, Knight's advisory guidelines range was 292 to 365 months. The district court also noted that, even with an offense level of 36 based on the cocaine only, Knight's guidelines range was 235 to 293 months and that the prior sentence of 292 months is still within the guidelines range for cocaine alone.

4

Knight then addressed the district court, apologizing to his family and friends. Knight asked the district court for a reduced sentence so that he could return to his home and be a positive influence in his community. In response, the district court noted the significant amount of cocaine involved in Knight's offense and the damage this amount of drugs had inflicted on Knight's community. The district court also stated that Knight was not a "small-time dope dealer" and that Knight had not shown any remorse for his crime. The district court indicated that it had considered the 18 U.S.C. § 3553(a) factors, as well as letters it had received in support of Knight and determined that a guidelines sentence would be reasonable and justified by all the facts and circumstances. The district court then sentenced Knight to 292 months' imprisonment. The district court stated that "the sentence imposed addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation." This appeal followed.

## II. DISCUSSION

### A. Constructive Amendment

Knight argues that the district court's jury instructions relating to drug quantities and types constructively amended the indictment. The Fifth Amendment guarantees a defendant the right to be tried for only those offenses presented in an indictment and returned by a grand jury. United States v. Cancelliere, 69 F.3d

5

1116, 1121 (11th Cir. 1995).  An impermissible amendment to an indictment occurs "when the essential elements of the offense are altered to broaden the possible bases for conviction beyond what is contained in the indictment."  Id. (quotation marks omitted).

"A jury instruction that constructively amends a grand jury indictment constitutes per se reversible error because such an instruction violates a defendant's constitutional right to be tried on only those charges presented in a grand jury indictment and creates the possibility that the defendant may have been convicted on grounds not alleged in the indictment."  Id.  However, where, as here, the defendant raises the constructive amendment argument for the first time on appeal, we review only for plain error.  See United States v. Rutherford, 175 F.3d 899, 906 (11th Cir. 1999).  Plain error is an "(1) error, (2) that is plain, and (3) that affects substantial rights."  United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.) (quotation marks omitted), cert. denied, 545 U.S. 1127 (2005).  If all three conditions are met, we may exercise our discretion to recognize the forfeited error if "(4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. (quotation marks omitted).

Knight complains that the district court twice constructively amended the indictment.  First, Knight argues that the district court amended the indictment

when it instructed the jury that the government was required to prove only that "a measurable amount of the controlled substance" was the object of the conspiracy and that the jury could find Knight guilty even if it found that the conspiracy involved a quantity of the controlled substance that was "less than the amount or weight charged." In other words, according to Knight, the district court's jury instructions changed the term "more than 20 kilograms of cocaine" charged in the indictment to any measurable amount of a controlled substance. Second, Knight contends that the district court amended the indictment when it instructed the jury to find amounts for crack cocaine should it return a guilty verdict because the indictment charged only cocaine.

We need not address these issues because Knight has so clearly failed to show that any alleged errors affected his substantial rights. Knight's indictment charged a drug quantity of "more than 20 kilograms of cocaine." The government presented evidence that Knight's drug conspiracy involved amounts of cocaine well in excess of 20 kilograms. Through the special verdict form, the jury found beyond a reasonable doubt that Knight's conspiracy involved 50 kilograms of cocaine powder. In short, there is no doubt here that Knight was convicted of the offense charged in the indictment.

For this reason, Knight's reliance on United States v. Narog, 372 F.3d 1243

(11th Cir. 2004) is misplaced. First, <u>Narog</u> was a preserved-error case, meaning that any impermissible amendment required reversal without a showing of prejudice by the defendant. <u>Id.</u> at 1250. Second, under the facts and circumstances of the trial in <u>Narog</u>, it was not possible to tell whether the jury's verdict was based on "a controlled substance other than the one specified" in the indictment. <u>Id.</u> at 1249.

In contrast, the jury's special verdict form in Knight's case here makes it clear that the jury's verdict was completely consistent with the indictment. In any event, Knight's case is subject to only plain error review, and Knight clearly has shown no effect on his substantial rights.

The only alleged prejudice Knight points to with regard to the crack cocaine is the guidelines calculation of his sentence. It is well-settled that the district court may hold a defendant accountable for additional amounts of drugs involved in the conspiracy, but not charged in the indictment, as relevant conduct. <u>See</u> <u>United States v. Ignancio Munio</u>, 909 F.2d 436, 438-39 (11th Cir. 1990); U.S.S.G. § 1B1.3(a)(1) & cmt. n.2. Additionally, the district court may find these drug amounts by a preponderance of the evidence at sentencing so long as the defendant's sentence does not exceed the statutory maximum authorized by the

jury's verdict.[2]  See United States v. Duncan, 400 F.3d 1297, 1304-05 (11th Cir.) (affirming district court's drug quantity finding based in part on even acquitted conduct), cert. denied, __ U.S. __, 126 S. Ct. 432 (2005).  Therefore, Knight cannot demonstrate prejudice by pointing to the effect the amount of crack cocaine had on his guidelines calculations.  Because Knight has not shown that any error affected his substantial rights, he has not met his burden to demonstrate plain error.

## B.     Extra-verdict Enhancements

Citing United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), Knight also argues that the district court violated his Fifth and Sixth Amendment rights when it enhanced his sentence based on drug quantities and type not alleged in the indictment.[3]  The district court resentenced Knight under the advisory guidelines. Knight's 292-month sentence does not exceed his statutory maximum of life imprisonment.  Therefore, the district court's findings relating to drug quantity and

---

[2]As noted earlier, a § 841(a) drug offense that involved 5 kilograms or more of cocaine is subject to a maximum life sentence.  See 21 U.S.C. § 841(b)(1)(A).  Therefore, Knight's statutory maximum sentence – life imprisonment – was authorized by the amount and type of drugs charged in his indictment (more than 20 kilograms of cocaine) and found by the jury at trial (50 kilograms of cocaine).  If anything, the district court's having the jury determine the amount of crack cocaine used in the relevant conduct guidelines calculation afforded Knight more process than was required.

[3]The government argues that, because Knight failed to raise his Booker argument at the resentencing hearing, we should review only for plain error.  Knight argues that he is entitled to de novo review because he raised the Booker issue in a position statement filed at the district court's instruction prior to the sentencing hearing.  We need not resolve this issue because we find no reversible error under either standard of review.

type and the corresponding guidelines enhancements did not violate Knight's Fifth and Sixth Amendment rights. See United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005); Rodriguez, 398 F.3d at 1301.

## C.    Reasonableness

Finally, Knight argues that his 292-month sentence is unreasonable and contends that the district court erred by not making particularized findings as to each of the § 3553(a) factors.

After Booker, a district court, in determining a reasonable sentence, must consider the correctly calculated advisory guidelines range and the § 3553(a) factors. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). Although the district court must consider the § 3553(a) factors, "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).

We review the defendant's ultimate sentence for reasonableness in light of the § 3553(a) factors. United States v. Williams, 435 F.3d 1350, 1353 (11th Cir. 2006). This "[r]eview for reasonableness is deferential. . . . [a]nd when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." Talley, 431 F.3d at 788. "[T]he party

10

who challenges the sentence bears the burden of establishing that the sentence is unreasonable in . . . light of both [the] record and the factors in section 3553(a)." United States v. Bonilla, 463 F.3d 1176, 1180 (11th Cir. 2006) (quotation marks omitted).

After review, nothing in the record convinces us that Knight's 292-month sentence was unreasonable. The district court correctly calculated Knight's guidelines range as 292 to 365 months, and Knight's sentence falls at the bottom of that range. The district court indicated that it had considered the § 3553(a) factors. Furthermore, although the district court was not required to do so, it discussed several factors, including the characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense and to provide a just punishment for the offense and the need for deterrence. Perhaps most significant to the district court was the substantial amount of drugs Knight trafficked and Knight's lack of remorse. Under the facts and circumstances of this case, Knight has failed to show that his 292-month sentence is unreasonable.

**AFFIRMED.**