[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13293

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 28, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-20588-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES PARK,
a.k.a. Mobboy,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 28, 2010)

Before BLACK, WILSON and COX, Circuit Judges.

PER CURIAM:

James Park appeals his conviction and sentence for conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841 and 846. On appeal, Park raises the following issues: (1) whether the district court erred by admitting evidence of prior drug trafficking between Park and Nelson Aguilar, and Park's subsequent possession of drugs in Georgia; (2) whether the district court erred by denying Park's motion for a mistrial after Aguilar testified to the jury that Park would kill him if he could; (3) whether the district court erred by denying Park's motion for judgment of acquittal where Park's involvement amounted to mere presence and association with coconspirator Tim Starks; (4) whether the district court erred by finding Park accountable for 15 kilograms of reasonably foreseeable cocaine where the only evidence concerning Park related to 10 kilograms of cocaine; (5) whether the district court erred by refusing to apply a two-level minor-role reduction; and (6) whether the district court erred by refusing to give Park's requested jury instruction concerning interdependence of defendants in conspiracy cases.

After careful review of the record and the parties' briefs, and having had the benefit of oral argument, we affirm Park's conviction and sentence.[1]

---

[1] In his brief, Park also argued the district court erred by refusing to grant a new trial based on a claim of newly discovered evidence. This argument fails both because it is without merit and because it was not briefed to the district court.

I.

At trial, confidential informant Nelson Aguilar testified concerning his prior drug dealings with Park's coconspirators and with Park. The district court admitted the evidence as inextricably intertwined, but gave the standard limiting instruction concerning 404(b) evidence. The district court also admitted evidence, accompanied by a limiting instruction, of Park's possession of drugs in October 2007 in Georgia.

On appeal, Park contends Aguilar's testimony was not supported by any corroborating evidence and was offered only to show bad character. Park also challenges the admission of evidence concerning his possession of drugs in Georgia, which occurred after the conspiracy charged in the indictment.

Generally, evidence of other crimes committed outside of those charged is not admissible. Fed. R. Evid. 404(b). Rule 404(b) permits the introduction of such evidence only if (1) the evidence is relevant to an issue other than the defendant's character, (2) the act is established by sufficient proof to permit a jury to find the defendant committed the extrinsic act, and (3) the probative value of the evidence is not substantially outweighed by its undue prejudice. *United States v. Cancelliere*, 69 F.3d 1116, 1124 (11th Cir. 1995). The standard for evaluating the admissibility of a subsequent bad act under Rule 404(b) is identical to that for

3

determining whether a prior bad act should be admitted under this rule. *United States v. Jernigan*, 341 F.3d 1273, 1283–84 (11th Cir. 2003).

Rule 404(b) does not apply where the evidence concerns the context, motive, and set-up of the crime, or forms an integral and natural account of the crime, or is necessary to complete the story of the crime for the jury. *See United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992); *see also United States v. McLean*, 138 F.3d 1398, 1402 (11th Cir. 1998) (prior drug dealing "inextricably intertwined" where it explained the relationship between defendant and witness and was needed to assess the witness's credibility). Such "inextricably intertwined" evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice under Fed R. Evid. 403. *Fortenberry*, 971 F.3d at 721. The balance under Rule 403 should be struck in favor of admissibility. *Id.*

The district court did not abuse its discretion by admitting Aguilar's testimony as inextricably intertwined.[2] At trial, Park claimed he had spent only minutes with coconspirator Tim Starks in Aguilar's car "talking about people on the street." Thus, the evidence of Aguilar's prior drug dealing with Tim Starks

---

[2] A district court's admission of evidence is reviewed for abuse of discretion. *United States v. Trujillo*, 146 F.3d 838, 843 (11th Cir. 1998).

and Park was necessary to demonstrate their prior relationships and to explain the context of their meeting on June 8, 2007. *See id.* The evidence gave meaning to Park's assurance that he could take up more of Aguilar's business if Aguilar stopped dealing with a competing drug dealer. *Id.* Thus, Aguilar's testimony concerning his prior dealings with Park and Park's coconspirators was inextricably intertwined with the evidence of the conspiracy.

The Rule 404(b) evidence concerning Park's subsequent possession of cocaine was also properly admitted. Park placed his intent at issue in this case by maintaining he had not conspired with his co-conspirators to possess cocaine with intent to distribute. Thus, that Park possessed cocaine four months later was relevant to his intent and motive in his dealings with Aguilar and his coconspirators. *See Cancelliere*, 69 F.3d at 1124. His possession of cocaine in October was also established by sufficient proof to permit a jury finding that he had committed the act: the trooper who had stopped Park for speeding testified that Park had appeared extremely nervous and had difficulty answering simple questions. Moreover, a trained narcotics dog alerted to the presence of cocaine in Park's automobile. Finally, there was no undue prejudice because the district court issued a limiting instruction on the use of the evidence. Accordingly, the district court did not abuse its discretion by admitting this Rule 404(b) evidence.

II.

Park contends the district court erred by denying his motion for a mistrial, which was based on Aguilar's response to a question. During his direct examination, Aguilar explained a statement made regarding Park meant that Park hated informants. The prosecutor then inquired, "And what are you?," to which Aguilar responded: "An informant. Oh, he would kill me if he would get a chance."

Park is entitled to a grant of mistrial only upon a showing of substantial prejudice. *See United States v. Chastain*, 198 F.3d 1338, 1352 (11th Cir. 1999). Substantial prejudice occurs when there is a "reasonable probability that, but for the remarks, the outcome of the trial would have been different." *United States v. Emmanuel*, 565 F.3d 1324, 1334 (11th Cir. 2009) (citation omitted).

The district court, which was in the best position to evaluate the prejudicial effect of the statement, did not abuse its discretion by denying Park's motion for a mistrial.[3] Park has not shown he suffered substantial prejudice as a result of Aguilar's comment. The comment was unsolicited and there was no further reference to the remark during trial. Moreover, there was strong evidence of

_____

[3] "We review a decision not to grant a mistrial for abuse of discretion." *Emmanuel*, 565 F.3d at 1334.

Park's participation in the conspiracy, including video recordings, audio recordings, and cell phone records.

## III.

Park challenges the sufficiency of the evidence presented against him. Specifically, he argues his mere presence at one meeting and his agreement with certain statements at that meeting were insufficient to support a finding that he conspired with intent to distribute cocaine.

The evidence amply demonstrates Park's participation in the conspiracy.[4] Park and Tim Starks assured Aguilar they could sell all the cocaine Aguilar could provide them, and they urged Aguilar to cut out another dealer so they could take up his supply. Park also assured Aguilar the delivery location was safe, and approved of the $19,500 per kilogram price tag. Aguilar testified he could not have reached the agreement on those terms if Park had not been an active participant in the negotiations. That Park was not present when Aguilar delivered the cocaine does not absolve him—Park was nearby and was in contact with his co-conspirators before and after the delivery, and Aguilar noted there was no

---

[4] We review *de novo* the sufficiency of the Government's evidence presented at trial. *United States v. LeCroy*, 441 F.3d 914, 924 (11th Cir. 2006). This Court views the evidence in the light most favorable to the Government, with all reasonable inferences and credibility choices made in the Government's favor. *Id.*

reason for Park to be present at the delivery. Based on this evidence, the jury reasonably concluded Park was an active participant in the conspiracy.

IV.

Park contends he was not responsible for 15 kilograms of cocaine because that amount was not reasonably foreseeable from his membership in the conspiracy. Rather, Park contends he should be held responsible for only ten kilograms.

A defendant is accountable for co-conspirators' conduct that was reasonably foreseeable and within the scope of the criminal activity that the defendant agreed to undertake. *United States v. Westry*, 524 F.3d 1198, 1219 (11th Cir. 2008). A district court errs when it determines the foreseeable quantity of drugs "without making the critical inquiry as to the scope of criminal activity undertaken by the defendant." *United States v. Bush*, 28 F.3d 1084, 1087 (11th Cir. 1994). In a "reverse sting" operation, like here, "the agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not by the defendant." U.S.S.G. § 2D1.1 cmt. n.12.

The district court did not clearly err by holding Park accountable for 15 kilograms of cocaine.[5] The district court properly limited the scope of Park's criminal activity to the June 8 meeting in which he participated and the subsequent delivery resulting from the meeting. Furthermore, 15 kilograms was a foreseeable amount of cocaine even though Park arrived at the June 8 meeting after Aguilar discussed providing between 10 and 15 kilograms. Although Park did not witness Aguilar's statement regarding the amount of cocaine Aguilar could supply, Park told Aguilar that he could handle enough cocaine for all of Overtown. Park even convinced Aguilar to stop dealing with another dealer so Park and Tim Starks could take his share. Based on these statements indicating Park could and wanted to move large quantities of cocaine, Park could foresee that the conspiracy would involve at least 15 kilograms.

V.

Park contends that he played only a minor role in the conspiracy and that his sentence should have been reduced accordingly. Park claims he is less culpable than his coconspirators because he was not present at the delivery of the cocaine, and he did not order or pay for it.

---

[5] This Court reviews determinations of drug quantities for clear error. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). The Government bears the burden of proving a disputed fact, such as drug quantity, by a preponderance of the evidence. *Id.*

9

The district court may reduce an offense level by two points if a defendant is only a minor participant in the offense. U.S.S.G. § 3B1.2(b). To determine if a defendant is a minor participant, "the district court must measure the defendant's role against the relevant conduct for which [he] was held accountable at sentencing." *United States v. Rodriguez De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc). If the first inquiry is not dispositive, "the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct." *Id.*

The district court did not clearly err when it denied Park's request for a minor role reduction.[6] Aguilar testified that Park was an equal partner with Tim Starks, and that Park's participation in the meeting was integral to reaching an agreement to deliver the cocaine. The district court was entitled to believe Aguilar's testimony. *See United States v. Clay*, 483 F.3d 739, 744 (11th Cir. 2007) (noting the district court is afforded substantial deference "in reaching credibility determinations with respect to witness testimony"). The district court reasonably found that Park was a key player in the cocaine delivery and that he was no less culpable than coconspirator Greg Starks, who helped to set up the

---

[6] "This Court has long and repeatedly held that a district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error." *Rodriguez De Varon*, 175 F.3d at 937.

meeting and collect the fake cocaine. *See Rodriguez De Varon*, 175 F.3d at 945.

Thus, Park failed to prove he was entitled to a minor role sentence reduction.

VI.

Park contends the district court erred by refusing to give his requested theory of defense instruction. Park's proposed instruction used "interdependence" language to describe the concepts of mere presence or association.

The district court's refusal to give the requested "interdependence" instruction was not an abuse of discretion.[7] The essence of the proposed instruction was adequately set out in the district court's instructions to the jury, which outlined the concept of mere presence or association. Moreover, defense counsel was able to argue to the jury in summation the theory encompassed in his proposed instruction.

**AFFIRMED.**

---

[7] The district court's refusal to give a defendant's requested jury instructions is reviewed for abuse of discretion. *United States v. Schlei*, 122 F.3d 944, 969 (11th Cir. 1997).